UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
STATE FARM INSURANCE COMPANY as
subrogee of Curt and Adele Ottenheimer,                    CIVIL ACTION NO.: 07 CV 34
                                                                        (JFB)
                    Plaintiff,

           -against-

CIGARETTES DIRECT 2 YOU a/k/a CD2U and
a/k/a CHAVEZ, INC., formerly known as
C.D. WHOLESALE, LLC,

                    Defendants.
-----------------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO AMEND COMPLAINT AND IN OPPOSITION TO MOTION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

POINT I.     THE DEFENDANTS' MOTION TO DISMISS FOR IMPROPER SERVICE
             SHOULD BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.     The Defendants' Papers are Procedurally Defective. . . . . . . . . . . . . . . . . . . . . . . . 2

2.     Plaintiff's Service of Process was Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

3.     28 USC § 1448 Allows Plaintiff to Re-Serve to Obviate Any Allegation of
       Insufficiency of Service of Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II.    THE COMPLAINT STATES VALID CLAIMS AS A MATTER OF LAW. 6

Standard Of Review Under 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

The History of the Reduced Ignition Propensity Requirement for Cigarettes. . . . . . . . . . . 7

1.     The Plaintiff Has A Private Cause Of Action Against The Defendants. . . . . . . . . . . . 9

       A.     New York General Business Law §§ 349 and 350. . . . . . . . . . . . . . . . . . . .10

2.     The Plaintiff May Recover Its Damages For The Defendants' Violation Of
       Statutory Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

3.     Plaintiff Has Alleged A Design And Manufacturing Defect. . . . . . . . . . . . . . . . . . 13

       A.     This Court May Take Judicial Notice of the Standards. . . . . . . . . . . . . . .13

4.     Comparative Negligence Does Not Preclude Recovery. . . . . . . . . . . . . . . . . . . . . 17

5.     The Plaintiff Was Not A Party To An Illegal Contract. . . . . . . . . . . . . . . . . . . . . 18

POINT III.   PLAINTIFF'S CROSS-MOTION TO AMEND MUST BE GRANTED. . . .20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Akers v Mutual Life Ins. Co.</u>, 59 Misc 273, 112 NYS 254 (1908) . . . . . . . . . . . . . . . . . . . . . . . .19

<u>Artache v Goldin</u>, 133 AD2d 596, 519 NYS2d 702 (2d Dept 1987) . . . . . . . . . . . . . . . . . . . 19

<u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Cornell v. Exxon Corp.</u>, 162 A.D.2d 892, 558 N.Y.S.2d 647 (3rd Dept. 1990) . . . . . . . . . . . . .18

<u>Cornier v. Spagna</u>, 101 A.D.2d 141, 475 N.Y.S.2d 7 (1st Dep't 1984) . . . . . . . . . . . . . . . . . . .15

<u>Cover v. Cohen</u>, 61 N.Y.2d  261, 473 N.Y.S.2d 378 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Cowen v. Am. Med. Sys., Inc.</u>, 411 F.Supp.2d 717 (E.D.Mich. 2006) . . . . . . . . . . . . . . . . . . . 5

<u>Davis v. Musler</u>, 713 F.2d 907 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>E.G. Cruz v. General Elec. Co.</u>, 223 A.D.2d 486, 637 N.Y.S.2d 15 (1st Dept. 1996) . . . . . . . .17

<u>Ezagui v. Dow Chem. Corp.</u>, 598 F.2d 727 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Golden Budha Corp. v. Canandian Land Co., NV</u>, 931 F.2d 196 (2d Cir. 1991) . . . . . . . . . . . .19

<u>Goshen v. Mutual Life Ins. Co. of New York</u>, 98 N.Y.2d 314 (2002) . . . . . . . . . . . . . . . . . . . .11

<u>Gryl ex. rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC</u>, 298 F.3d 136 (2d Cir. 2002) *cert denied*, 537 U.S. 1191, 123 S.Ct. 1262, 154 L.Ed.2d 1024 (2003) . . . . . . . . . . . . . . .6

<u>Guido v. New York Tel. Co.</u>, 145 A.D.2d 203, 538 N.Y.S.2d 87 (3rd Dept. 1989) . . . . . . . . . . 18

<u>Howard Stores Corp. v. Pope</u>, 1 N.Y.2d 110, 150 N.Y.S.2d 792 (1956) . . . . . . . . . . . . . . . . . .13

<u>Irwin v Curie</u>,171 NY 409, 64 NE 161 (1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

<u>Karlin v. IVF Am.</u>, 93 N.Y.2d 282, 290 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

<u>Katz v Zuckermann</u>, 119 A.D.2d 732, 501 N.Y.S.2d 144 (2d Dept 1986) . . . . . . . . . . . . . . . . .18

<u>Le Grand v. Evan</u>, 702 F.2d 415 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

<u>Leo v. Gen. Elec. Co.</u>, 111 F.R.D. 407 (E.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

<u>Lindsay v. Ortho Pharmaceutical Corp.</u>, 637 F.2d 87 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . .16

<u>Melkaz Int'l Inc. v. Flavor Innovation Inc.</u>, 167 F.R.D. 634 (E.D.N.Y. 1996) . . . . . . . . . . . . .3, 4

<u>Modern Computer Corp. v. Ma</u>, 862 F.Supp. 938 (EDNY 1994) . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20 (1995) . . .11

<u>Sawyer v. Dreis & Krump Manufacturing Co.</u>, 67 N.Y.2d 328, 502 N.Y.S.2d 696 (1986) . . . . .14

<u>Schafer v. Standard Ry. Fusee Corp.</u>, 200 A.D.2d 564, 606 N.Y.S.2d 332 (2nd Dept. 1994) . . .17

<u>Sheehy v. Big Flats Cmty Day, Inc.</u>, 73 N.Y.2d 629, 541 N.E.2d 18, 20 (1989) . . . . . . . . . . . .10

<u>Sita v. Danek Medical, Inc.</u>, 43 F.Supp2d 245 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . .14

<u>Small v. Lorillard Tobacco Co., Inc.</u>, 94 NY2d 43 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

<u>SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.</u>, 88 F.3d 780 (9th Cir. 1996) <i>cert. denied</i>, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Tracy v Talmage</u>, 14 N.Y. 162 (1856) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Voss v. Black & Decker Mfg. Co.</u>, 59 N.Y.2d 102, 463 N.Y.S.2d 398 (1983) . . . . . . . . . . . . . . 15

<u>Weinberg v. Colonial Williamsburg, Inc.</u>, 215 F.Supp. 633 (E.D.N.Y. 1963) . . . . . . . . . . . . . . .5

**Statutes**

Fed. R. Civ. P. 4(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Fed. R. Civ. P. 4(h)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Fed. R. Civ. P. 12 (b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19

Fed. R. Civ. P. 44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rule of Evidence 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Federal Rule of Evidence 803(18) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rule of Evidence 901(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Kentucky Rules of Civil Procedure 4.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Title 18, Part 429, Official Compilation of Codes, Rules, and Regulations of the State of New York, "New York Fire Safety Standards for Cigarettes" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

New York Civil Practice Law and Rules, Article 14-A . . . . . . . . . . . . . . . . . . . . . .  17

New York Education Law § 6509-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

New York Executive Law § 156-c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

New York General Business Law § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

New York General Business Law § 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

New York Public Law §1399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

15 U.S.C. §1381 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. §1448 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5

## **Miscellaneous**

4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1082 (3d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Assessment of Public Comment – Fire Safety Standards for Cigarettes. 2003. (Accessed January 18, 2007, at http.www.dos.state.ny.us/fire/cigrulepc90303.htm) . . . . . . . . . . . . . . . . . . . . . . . . .7

Pattern Jury Instructions 2nd N.Y.S. Supp. 1995 119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pattern Jury Instructions 2nd 2:120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiff, State Farm Insurance Company as subrogee of Curt and Adele Ottenheimer ("State Farm"), respectfully submits this memorandum of law in support of Plaintiff's cross-motion to amend the Complaint and also in opposition to the motion by the Defendants to dismiss the lawsuit for improper service of process or, in the alternative, for failure to state a claim.

<u>**SUMMARY OF ARGUMENT**</u>

The validity of the service is confirmed by the affidavits of the process server annexed to the Affidavit of Robert W. Phelan, Esq.  The affidavits are not contravened by any affidavits from Defendants nor is any averment made as to how they became aware of the lawsuit. Furthermore, in light of the readily available remedy provided by 28 U.S.C. §1448 to re-serve the summons and complaint, a hearing to determine whether service was proper would be an unnecessary waste of scarce judicial resources. The Defendants' remaining arguments arguing that the Complaint fails to state a claim are based upon a misstatement or misreading of unambiguous statutes and caselaw.  By their motion, the Defendants seek to escape liability for introducing into the stream of commerce, a cigarette which failed to meet the applicable reduced ignition propensity ("RIP") standards for cigarettes sold in the state.  Therefore, the Defendants' motion should be denied in its entirety.

The Plaintiff's cross-motion to amend must be also granted.  Fed. R. Civ. P. 15 is clear that a party may amend its pleading once without leave of Court at any time before a responsive pleading is served.  In the present case, the Defendants moved to dismiss the action rather than filing an Answer. As such, no Answer has been filed and the Plaintiff may still amend the Complaint as a matter of course. The Plaintiff's Amended Complaint does not add any facts, but only adds a cause of action, and includes a jury demand.

**POINT I.**     <u>**THE DEFENDANTS' MOTION TO DISMISS FOR IMPROPER SERVICE**</u>
<u>**SHOULD BE DENIED**</u>

Although the Defendants' Motion to Dismiss is primarily predicated upon Rule 12(b)(6),

by way of Footnote # 2 (Defendants' Memorandum of Law, Page 1), the Defendants also suggest

that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12 (b)(5).

Specifically, Defendants allege that State Farm did not properly serve them in this action and

therefore this Court has not obtained jurisdiction over the Defendants.[1]

**1.**     <u>**The Defendants' Papers are Procedurally Defective**</u>

As an initial matter, the Defendants' motion papers to dismiss due to lack of proper

service are defective, and, therefore, must be denied. The law is clear that such a motion must be

supported by affidavits that challenge the process or sufficiency of service. *See e.g.*, <u>Davis v.</u>

<u>Musler</u>, 713 F.2d 907, 910-11 (2d Cir. 1983); <u>Modern Computer Corp. v. Ma</u>, 862 F.Supp. 938,

946 (E.D.N.Y. 1994). The Defendants have not submitted a sworn affidavit contravening the

facts set forth in the affidavits of Plaintiff's process server previously filed with the Court. An

unattributed and undocumented assertion in a footnote in an attorney's memorandum of law is

not a proper or accepted method for the introduction of evidence as to who is an employee and

who is authorized to accept service on behalf of the Defendants. The Defendants' attorneys'

unsupported argument cannot defeat jurisdiction.

**2.**     <u>**Plaintiff's Service of Process was Proper**</u>

The Plaintiff's service of process was sufficient. Pursuant to Fed. R. Civ. P. 4(h)(1),

service upon a corporation may be effected:

> in a judicial district of the United States in the manner prescribed
> for individuals by subdivision (e)(1), or by delivering a copy of the
> summons and of the complaint to an officer, a managing or general

---

[1] This relief was discussed between counsel at the pre-motion conference on January 23, 2007, at which time Defendant's counsel acknowledged on the record that said relief was moot due to 28 USC § 1448.

agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Id. Fed. R. Civ. P. 4(e)(1) also provides that service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Id.

The Defendants' Notice of Removal admits that the Defendant Chavez, Inc. and C.D. Wholesale are or were Kentucky corporations or entities.  See Exhibit "1" at Paragraph 2(c) and (d).  The applicable Kentucky law provides that "[s]ervice shall be made upon a corporation by serving an officer or managing agent thereof, or the chief agent in the country wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf." Kentucky Rules of Civil Procedure 4.04.  When the corporation is regularly doing business in Kentucky, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions.

Courts within the Second Circuit have adopted such a broad approach to service. *See, e.g.,* Melkaz Int'l Inc. v. Flavor Innovation Inc., 167 F.R.D. 634, 642-43 (E.D.N.Y. 1996) (holding service on corporation proper where process server went to corporate defendant's headquarters, identified himself to an employee of corporate defendant and stated that he was there to serve legal papers, and the employee then directed him to another employee who accepted service, even though neither employee was authorized to accept service and neither represented that she was in fact so authorized, because both were obviously corporate defendant employees and the employee re-delivered the summons and complaint to an employee authorized

to accept service on the same date); <u>Leo v. Gen. Elec. Co.</u>, 111 F.R.D. 407, 414 (E.D.N.Y. 1986) (sustaining service under either the theory of apparent authority or re-delivery where the corporate defendant secretary approached the process server from behind the locked lobby doors and was thus clearly a corporate defendant employee, and it was uncontested that upon receiving process, the secretary immediately re-delivered the papers to the managing agent authorized to receive process).

Copies of the affidavits of service are attached to Affidavit of Robert W. Phelan, Esq. as Exhibits "2" and "3". The affidavits clearly prove the sufficiency and validity of service. Thus, service should be sustained since the employee accepting service had apparent authority to do so. Indeed, if service was improper, the Defendants have yet failed to explain, by way of affidavit, how they became aware of the lawsuit.

At a minimum, a hearing of the Defendants would be required to establish the facts pertaining to the service in question. *See* <u>Melkaz</u>, 167 F.R.D. at 638 (case referred to the Magistrate Judge to conduct a hearing "for the purpose of resolving the dispute surrounding the service of the summons and complaint."); <u>Leo</u>, 111 F.R.D. at 408 (case referred to Magistrate Judge for a hearing "to determine whether service was proper."). Without an affidavit or testimony from the Defendants, neither this Court nor counsel for the Plaintiff are able to have a factually accurate understanding of what transpired when the Defendants were served by Plaintiff's process server. Therefore, the Defendants' request for relief with respect to the service of process must be denied.

**3.**     **28 USC § 1448 Allows Plaintiff to Re-Serve to Obviate Any Allegation of Insufficiency of Service of Process**

Even if this Court determined that the Plaintiff failed to properly effectuate service, the

motion is moot, because the Defendants' act of removal allows the Plaintiff to re-serve the

papers.

This action was commenced in the Supreme Court of the State of New York, County of

Nassau on November 20, 2006.  Subsequently, it was removed to this Court by the Defendants.

(See Exhibit 1).  28 U.S.C. §1448 provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Id. Thus, even in instances where federal courts have held that service of process was

defective, the plaintiff was permitted to re-serve the pleadings after the defendants had removed

to federal court. *See, e.g.,* Weinberg v. Colonial Williamsburg, Inc., 215 F.Supp. 633, 635

(E.D.N.Y. 1963) (declining to dismiss for ineffective service of process because "in a removed

action, if the original service was defective, service of new process under 28 U.S.C. §1448 may

be authorized."); Cowen v. Am. Med. Sys., Inc., 411 F.Supp.2d 717, 720 (E.D.Mich. 2006)

("[A]fter an action is removed, federal law governs, and defects in service can be cured in

accordance with federal rules of procedure."). As discussed in Wright & Miller's Federal

Practice and Procedure "Section 1448 indicates a philosophy that removed cases are to be

handled substantially as though they had never been in a state court." 4A Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure §1082 (3d ed. 2002) (citation omitted).

In light of the readily available remedy provided by 28 U.S.C. §1448, and since there yet remains time within the applicable statutes of limitations to commence the action anew, a hearing to determine whether service was proper seems an unnecessary waste of judicial resources.  Relying on the aforementioned authority, it is respectfully requested that Plaintiff be permitted to re-serve its complaint upon the Defendants pursuant to Fed. R. Civ. P. 4(h) if this Court does not deem service valid.

## POINT II.    THE COMPLAINT STATES VALID CLAIMS AS A MATTER OF LAW

The Defendants set forth five basic arguments that State Farm has failed to state a claim upon which relief may be granted.  Each of the arguments will be addressed in turn after a brief statement of the applicable standard or review and a history behind the legislated standard for reduced ignition propensity cigarettes.

### Standard Of Review Under 12(b)(6)

A motion to dismiss for failure to state a claim tests the legal sufficiency of a party's claim for relief.  A claim may be dismissed only if it asserts a legal theory that is not cognizable as a matter of law or if it fails to support a cognizable legal claim.  *See* SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996).  When a claim is challenged under this Rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. Gryl ex. rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC, 298 F.3d 136, 140 (2d Cir. 2002) *cert denied*, 537 U.S. 1191, 123 S.Ct. 1262, 154 L.Ed.2d 1024 (2003); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

### The History of the Reduced Ignition Propensity Requirement for Cigarettes

In 1984, New York Assemblyman Pete Grannis introduced a fire safe cigarette bill that was eventually enacted. The State of New York passed legislation on August 16, 2000 that gave the Office of Fire Prevention and Control until January 1, 2003 to promulgate an ignition propensity standard for cigarettes sold in the state. The legislation called for all cigarettes sold in the state of New York to have reduced ignition propensity by July 2003. Implementation of the law was delayed until June 28, 2004, when the New York Fire Safety Standards for Cigarettes ("FSSC"), Part 429 of Title 18 of the Official Compilation of Codes, Rules, and Regulations of the State of New York, became effective.

The tobacco industry, which had for decades actively opposed passage of state and federal requirements for cigarette fire safety standards, argued that it was not technically feasible to manufacture such a cigarette. In direct response to the proposed rule-making, Brown & Williamson Tobacco Corp., R J Reynolds Tobacco Co., Specialty Tobacco Council directed a comment in opposition to the legislation and the proposed standard. The tobacco companies' objected that "[i]t has not been demonstrated that the performance standard specified in section 4 of the proposed rule will impact real world fire scenarios." Assessment of Public Comment – Fire Safety Standards for Cigarettes. 2003. (Accessed January 18, 2007, at http.www.dos.state.ny.us/fire/cigrulepc90303.htm).

The State administrative agency rejected the tobacco companies' position, responding:

> Large changes in ignition strength test results can be expected to reflect significant changes in fire risk. The final report of the federal Technical Study Group on Cigarette and Little Cigar Fire Safety, Cigarette Safety Act of 1984, shows that there is a good correlation between ignition tests on furniture mock-ups and the results of tests on furniture made of the same materials. An analysis of cigarette industry data [Eberhardt, K.R., Levenson, M.S., and Gann, R.G., "Fabrics for Testing the Ignition Propensity

of Cigarettes," Fire and Materials 21, 259-264 (1997)] indicates that most upholstery fabrics rank cigarettes no differently from the materials used in the Mock-up Ignition Test Method. Finally, Table 33 in NIST Special Publication 851 – "Test Methods for Quantifying the Propensity of Cigarettes to Ignite Soft Furnishings" - shows a good relationship between the Mock-up Ignition Method and the Cigarette Extinction Method, which became the test method, ASTM E2187-02b, specified in section 429.3 of the proposed rule. There is reason to expect that compliance with the performance standard specified in section 429.4 of the proposed rule will result in a significant reduction in cigarette-initiated fires. Reducing the heat output and the burning time of a cigarette will reduce the likelihood that it will ignite a fire.

The New York FSSC sets a minimum performance requirement for cigarettes which are to be tested in accordance with the American Society of Testing and Materials standard E2187-02b. The standard requires a lit cigarette to be placed on ten layers of standard filter paper in a draft-free environment and then observed to determine whether or not the tobacco column burns through its full length. A brand is in compliance if no more than 25 percent of the 40 cigarettes tested in a trial exhibit full length burns.

The FSSC requirements evolved from the "Cigarette Extinction Method" first developed by the National Institute of Standards and Technology ("NIST"). NIST reported that both the Cigarette Extinction Method, and an alternative measure of ignition propensity called the "Mock-Up Ignition Method," produced similar results for routine measurement of the propensity of cigarettes to ignite. Performance under both methods was linked with reduced ignition behavior. The New York State Office of Fire Prevention and Control stated, "there is good reason to expect lower cigarette ignition strength performance required by the New York State standard to result in significant reduction in cigarette initiated fires."

Attached as Exhibit 6 to the Affidavit of Robert W. Phelan, Esq is a list of the cigarettes which are presently certified by the manufacturers as complaint with the applicable New York

design and safety standards. It is important to note that the "Satin" brand cigarettes is not a certified brand.

### 1.     The Plaintiff Has A Private Cause Of Action Against The Defendants

The Defendants first argue that the Plaintiff has no private cause of action for the sale of cigarettes which are not RIP certified.  The Complaint does allege, *inter alia*, that the Defendants' sale of cigarettes violated at least two statutes: New York Executive Law § 156-c and New York Public Law §1399.  The Defendants argue that there is an implied preemption due to the express provisions set forth in the two laws. It is admittedly a novel question of state law whether the two statutes provide for a private cause of action.

But it is without basis  that the Defendants assumed that "all of State Farm's claims are predicated on alleged violations of [the] two specific New York statutes." (Defendants' Memorandum of Law, Page 4).[2]  Indeed, the Plaintiff believes that the two laws selected by the

---

[2] Pursuant to New York Executive Law § 63(12), Elliot Spitzer, Attorney General of the State of New York, caused an inquiry into certain similar business practices of DHL Holdings USA, Inc. On July 1, 2005, he found that such similar conduct violated, inter alia:

(1)      Public Health Law §1399-ll, entitled "Unlawful Shipment of Cigarettes" which makes it unlawful for a person engaged in the business of selling cigarettes to ship or cause to be shipped any cigarettes to any person who is not: (a) a licensed cigarette tax agent or wholesale dealer, or a registered retail dealer; (b) an export warehouse proprietor; or (c) a government officer, employee or agent acting in accordance with his or her official duties;

(2)      Tax Law § 1814, entitled "Cigarette and Tobacco Products Tax," which prohibits any person from attempting to "evade or defeat" state cigarette and tobacco product taxes;

(3)      Penal Law §115.00, entitled "Criminal Facilitation in the Fourth Degree", prohibits any person, believing it is probable that he or she is rendering aid to a person who intends to commit a crime, from providing such person with the means or opportunity to commit such crime, and which in fact aids such person to commit a felony;

(4)      Section 376 of Title 15 of the United State Code, entitled "Report to State Tobacco Tax Administrator," which provides that any person who sells cigarettes in interstate commerce must file certain documents with the tobacco tax administrator of the state into which such cigarettes are sold;

(5)      Section 1341 of Title 18 of the United States Code, entitled "Frauds and Swindles," prohibits any person from placing any matter in the mails for the purpose of executing a scheme or artifice to obtain money or property by means of false or fraudulent pretenses or representations;

(6)      Section 1343 of Title 18 of the United States Code, entitled "Fraud by Wire, Radio or Television", prohibits the transmission of interstate wire communications in furtherance of a scheme to obtain money or property by means of false or fraudulent pretenses or representations; and

(7)      Executive Law § 63(12), which prohibits repeated illegal acts and persistent illegality in carrying on, conducting or transacting business.

Defendants set forth merely one basis for recovery predicated in the Defendants' negligence *per se*.

However, in addition to the two aforementioned laws, State Farm's claims are also based upon other statutes, as well in the common law causes of action provided for by the substantive law of the state.  For example, the Defendants' own citation to <u>Sheehy v. Big Flats Cmty Day, Inc.</u>, 73 N.Y.2d 629, 633, 541 N.E.2d 18, 20 (1989) shows that the Plaintiff's pleading can be read to encompass a claim for a private cause of action arising from violation of the state's Penal Laws.  Finally, the statutory right to a private cause of action under General Business Law § 349 for fraudulent misrepresentation or concealment of facts and under common law theories of recovery, negligence, breach of warranty, are not preempted by the two statutes selected by the Defendants.

A.    <u>New York General Business Law §§ 349 and 350</u>

The Plaintiff's Amended Complaint alleges causes of action under New York General Business Law §§ 349 and 350, which provide for private causes of action.

General Business Law § 349 is a consumer protection statute designed to protect against deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state (General Business Law § 349 (a)).  Though originally intended to be enforced by the attorney general (see General Business Law § 349 (b)), the statute was amended in 1980 to include a private right of action (L1980, ch. 346). The amendment was intended to afford additional protection for consumers, allowing them to bring suit on their own behalf without relying on the attorney general for enforcement.  *See* Assembly Mem in Support, Bill Jacket, L 1980, ch. 346 (suggesting that the attorney general must focus on those cases that have

---

*"In the Matter of DHL Holdings USA, Inc. and DHL Express (USA), Inc."* Attorney General of the State of New York, Health Care Bureau, July 1, 2005.

a widespread effect and that the measure would allow individuals to prosecute remaining

actions.) Thus, "any person who has been injured by reason of any violation of this section may

bring an action in his own name to enjoin such unlawful act or practice, an action to recover his

actual damages or fifty dollars, whichever is greater, or both such actions" (General Business

Law § 349 (h)).  As the New York Court of Appeals has previously noted, the scope of the

statute "is intentionally broad, applying to 'virtually all economic activity'" Goshen v. Mutual

Life Ins. Co. of New York, 98 N.Y.2d 314, 324 (2002) (quoting Karlin v. IVF Am., 93 N.Y.2d

282, 290 (1999)). In order to make out a valid section 349 claim, a plaintiff must allege both a

deceptive act or practice directed towards consumers and that such act or practice resulted in

actual injury to a plaintiff.  See Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 55-56

(1999); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25-

26 (1995).

Attached as Exhibit 5 to the Affidavit of Robert W. Phelan, Esq. are screen print-outs of

the Defendants' website.  The Defendants' website contains the following question on its

Frequently Asked Questions ("FAQ") page:

"10.    Is ordering cigarettes through the Internet legal?"

The Defendants' website refers the internet user to its "legal" page, (also attached as

Exhibit 5) wherein it incorrectly, deceptively and fraudulently advertises that "Federal legislation

permits the purchase and interstate shipment of cigarette products for personal consumption in

all 50 states." The Plaintiff's insureds read the statement, believed the statement, relied upon the

statement, and ordered the "Satin" brand of cigarettes which was sold by the Defendants to the

Plaintiff's insureds.  The Plaintiff's Amended Complaint therefore provides for a cause of action

based upon the defendants' fraudulent and deceptive conduct. (See Exhibit 4, Fourth Cause of Action).

The deceptive act or practice alleged here is that defendants, knowing that the product was illegal in the state of New York, misrepresented the legality of the sale. Although the Defendants knew that the cigarettes did not meet the reduced ignition propensity standards, they engaged in an internet campaign to encourage consumers to purchase Satin brand of cigarettes. Plaintiff further alleges its subrogors relied upon the misrepresentation, and that, as a consequence, when the cigarette failed to extinguish itself, a fire ensued, and damaged Plaintiff's insureds' property.

**2.      The Plaintiff May Recover Its Damages For The Defendants' Violation Of Statutory Law**

The Defendants' second argument is, in essence, that the Plaintiff's insureds violated the law, and therefore, there can be no recovery. It is true that if a claimant broke a law at the time the alleged negligence occurred, this may reduce a defendant's liability.

However, in the instant action, all of the laws are directed towards the behavior of the Defendants. The statutes are directed at the manufacturers and retailer of the cigarettes and not at the consumer. It is not illegal to smoke Satin cigarettes. It is only illegal to sell cigarettes which are not certified to meet the RIP standards. Indeed, the Plaintiff is among the class of persons that the laws were designed to protect.

Furthermore, even if the Plaintiff's violated any law, it was because of the Defendants' fraudulent misrepresentations. In light of their misleading conduct, the Defendants cannot argue that the Plaintiff's insured violated a law, and, therefore, the Plaintiff may not recover. Such an argument is inconsistent with the very public policy behind the pertinent statutes.

3.     **Plaintiff Has Alleged A Design And Manufacturing Defect**

The Defendants' third argument is that the Plaintiff has failed to allege any design or manufacturing defect that would give rise to a viable claim sounding in strict liability, negligence or breach of warranty claim.  A simple reading of both the original and the Amended Complaint shows that the entire Second Cause of Action (Exhibit 4, paragraphs 21-23) alleges both design and manufacturing defects in the Defendants' cigarettes.

The Plaintiff reserves the right to further expand upon the applicable design and manufacturing defects and identify the applicable standards at the conclusion of discovery. Nevertheless, it is clear at this juncture that New York Executive Law § 156-c 2(a), the corresponding rule, New York Fire Safety Standards for Cigarettes, Part 429 of Title 18 of the Official Compilation of Codes, Rules, and Regulations of the State of New York, and American Society of Testing and Materials standard E2187-02b identify some of the pertinent industry design and manufacturing standards relevant to the cigarette which caused the fire which is the subject of this action.

A.     **This Court May Take Judicial Notice of the Standards**

Judicial notice of common law, federal and state statutes, municipal and county codes, rules and regulations is authorized by Federal Rule of Evidence ("FRE") 201.  Judicial notice allows the principle, statute, regulation or fact to be included in a judge's findings or as a part of the judge's jury instructions.  In addition, to statutes, regulations and treatises, Federal District Courts can also judicially notice facts that are widely and generally known FRE 201.

Courts in New York often *sua sponte* taken judicial notice of safety standards and municipal administrative codes.  For example, in Howard Stores Corp. v. Pope, 1 N.Y.2d 110, 150 N.Y.S.2d 792 (1956), the Court of Appeals took judicial notice of provisions in the New

York Administrative Code, which required that warning labels be placed on every container of combustible materials sold in New York City.  Although the Complaint did not contain any reference to administrative code provisions, the Appellants' brief to the Court of Appeals did.  In finding that the Complaint of tenants and owners damaged in a fire should not have been dismissed upon a motion by the vendor of the dangerous and unlabeled floor-finishing material, the Court of Appeals held that it could take judicial notice of the administrative code labeling requirements for combustible materials "as a public statute although it is not alleged in the Complaint."  Id.

Federal statutes also provide for a certification of official records kept within the United States such as Fed. R. Civ. P. 44, which can be used to qualify standards for admission into evidence.  Rule 901(b)(7) of the FRE which provides for self-authentication of domestic, federal and state public documents, can also be used to qualify a standard for admission.  Rule 803(18) of the FRE allows safety codes and standards to be introduced into evidence if they are (1) prepared by an organization formed for the chief purpose of promoting safety or (2) published by the government, even if they do not have the force in effect of law.

In New York, the law is that proof of non-compliance with a statutory standard can establish liability automatically through negligence or through being considered as "some evidence of negligence."  See PJI 2nd N.Y.S. Supp. 1995 119, 19-37.  For example, in Sawyer v. Dreis & Krump Manufacturing Co., 67 N.Y.2d 328, 336-37, 502 N.Y.S.2d 696 (1986), for example, the Court of Appeals held that an ANSI publication on safety requirements for the construction, care and use of power press brakes could be introduced as some evidence of the standard of care that a manufacturer of a power press should follow.

Indeed, absolute liability could result in a products liability case if an industry standard is incorporated in a statute that protects a definite class of persons; if the violation of that standard is the proximate cause of the injury; and if the plaintiff is a member of the protected class. Sita v. Danek Medical, Inc., 43 F.Supp2d 245, 262 (E.D.N.Y. 1999).  That is, violation of an industry standard, which is incorporated in a statute protecting a specific class, could create automatic liability regardless of negligence by the defendant or the plaintiff's lack of care.  The failure of a motorcycle helmet manufacturer to meet minimum safety standards, published by the U.S. Department of Transportation, under 15 U.S.C. Section  1381, was held to be some evidence of negligence in Cornier v. Spagna, 101 A.D.2d 141, 146, 475 N.Y.S.2d 7 (1st Dep't 1984), and in drug products liability cases, Second Circuit Court of Appeals held that the manufacturer's compliance with industry standards can provide a basis for liability. *See e.g.* Ezagui v. Dow Chem. Corp., 598 F.2d 727 (2d Cir. 1979) (Applying New York Law).  In Ezagui, the defendant, a vaccine manufacturer, failed to comply with labeling requirements of the Federal Food, Drug & Cosmetic Act and the New York Education Law.  The Second Circuit held that because the plaintiff's decedent, a recipient of the vaccine, was a member of the class of persons whom the statutes were intended to protect, the plaintiff was entitled to a jury instruction that the manufacturer's violation of the statutes constituted negligence *per se*.

The Defendants citations in support of its position on this point are inapposite to the instant facts.  All of the decisions cited by Defendants were rendered prior to the time frame when New York enacted its current RIP standard for cigarettes.  Indeed, none of the cases cited are even New York cases and should not be relied upon in interpreting a New York statute.

The time frame for gauging defectiveness, which is based on when the product was put on the market, see PJI 2:120, is an important element because the "reasonableness" of the

manufacturer's conduct may be related to a specific point in time.  In other words, an act or an omission that may have reasonable at a particular time might be deemed unreasonable at some later date when science, technology, state of the art or knowledge might dictate a different behavior as "reasonable."  In design defect cases, then, the focus is not upon the existence of some physical flaw in the product, but rather upon the reasonableness of the manufacturer's conscience design choice in light of then-existing technology, practicable, feasibility and other factors.  *See* <u>Voss v. Black & Decker Mfg. Co.</u>, 59 N.Y.2d 102, 463 N.Y.S.2d 398 (1983).

Voss' restatement of strict products liability for design cases as a "risk-utility balancing" inquiry was reinforced in <u>Cover v. Cohen</u>, 61 N.Y.2d 261, 473 N.Y.S.2d 378 (1984).  <u>Cover</u> is an important case which clarified that the relevant time frame for gauging design defects is the date the product was marketed.  In other words, the defectiveness of a product cannot be measured by standards of performance available at the time of trial or by technological capabilities available at the time of the fire. The Defendants attempt to flip the risk-utility balancing analysis on its head by suggesting that it should be applied to the Plaintiff's insureds, and not the Defendants'.  But the law is clear that the retailer is responsible for adhering and following the design standards set forth in the FSCC, legislated in Part 429 of Title 18.

Generally, in evaluating whether a manufacturer or retailed knew or should have known of the danger associated with its product, courts will hold the party to the standard of skill and knowledge of an expert in the field.  Thus, although a manufacturer or retailer need warn only of reasonably foreseeable dangers, it is charged with keeping abreast of scientific knowledge and developments in its field.  For example, in <u>Lindsay v. Ortho Pharmaceutical Corp.</u>, 637 F.2d 87 (2d Cir. 1980) (Applying New York Law), the Court held that a drug manufacturer is required "to keep abreast of the current state of knowledge of its product as gained through research,

adverse reaction reports, scientific literature and other available methods." For the foregoing reasons, the Defendants' third argument is without merit and must be denied.

**4.**   **Comparative Negligence Does Not Preclude Recovery**

The Defendants' fourth argument is that the Plaintiff assumed the risk of injury from fire by smoking cigarettes.

Under New York's fault-based scheme, the Plaintiff acknowledges that a claimant's fault or negligence must be factored in the liability equation. The applicable principle is "comparative fault." The defendant has the burden of pleading and proving a claimant's comparative fault. With some exceptions, a claimant's recovery will be reduced or diminished by the proportion of comparative fault attributable to the plaintiff under the applicable rules. Prior to the enactment of New York's comparative negligence statutes in 1975, culpable conduct (also referred to as "contributory negligence" and "assumption of the risk") was a complete defense, barring any and all recovery by the injured party. However, recognizing that the traditional contributory negligence doctrine had, by its rigid application, become an obstacle to the dispensing of substantial justice (*see* 1975 Report to the Legislature, 1975 N.Y. Laws at 1482), the legislature adopted CPLR Article 14-A. This statute, also known as the "pure comparative negligence" standard, became effective on September 1, 1975.

By its terms, CPLR 1411 is not limited to negligence actions. The legislative history supporting the proposed comparative negligence bill expressly stated the intention to formulate a standard that would extend to breach of warranty and strict liability causes of action. *See again* 1975 Report to the Legislature, 1975 N.Y. Laws at 1482, 1484. Consequently, the culpable conduct of the plaintiff serves only to proportionally diminish, as to opposed to completely preclude, the amount of damages recoverable. *See* E.G. Cruz v. General Elec. Co., 223 A.D.2d

486, 637 N.Y.S.2d 15 (1st Dept. 1996) (denying manufacturer's motion for summary judgment,

holding that while Plaintiff's decedent may have been negligent, it is for the  jury to determine

whether such negligence was the sole cause of the accident).

Furthermore, if the product was defective and the defect was a substantial factor in

causing the injury, the plaintiff's misuse of the product whether foreseeable or unforeseeable,

will serve merely to reduce the plaintiff's recovery.  *See* Schafer v. Standard Ry. Fusee Corp.,

200 A.D.2d 564, 606 N.Y.S.2d 332 (2nd Dept. 1994) (evidence was sufficient to permit jury to

find that manufacturer's highway flare was defective from the time it left manufacturer's control,

despite injured plaintiff's alleged misuse of flare by lighting it while facing into the wind).

The burden of proof of express assumption of risk is on the party claiming absolution of a

duty owed to the plaintiff. Guido v. New York Tel. Co., 145 A.D.2d 203, 538 N.Y.S.2d 87 (3rd

Dept. 1989). That burden includes a showing that the plaintiff "had knowledge of the risk and

voluntarily agreed to assume it." Cornell v. Exxon Corp., 162 A.D.2d 892, 894, 558 N.Y.S.2d

647, 650 (3rd Dept. 1990).  In contrast, here the Plaintiff alleges that the Defendants

fraudulently, deceptively and illegally represented their product as compliant with New York

Codes, Rules and Regulations (See Exhibit "4").  The Plaintiff's insureds could not have

assumed any risk, since the Defendants represented that the cigarettes were legal for sale in the

State of New York and that there was no risk with the product. At a minimum, it remains for the

jury to apportion any percentage of negligence at the time of trial. As such, the Defendants' pre-

Answer motion should be denied.

**5.**      **The Plaintiff Was Not A Knowing Party To An Illegal Contract**

The Defendants' fifth argument is that the party was a party to an illegal contract, and

cannot therefore sue to recover for damages arising from that contract. First, it should be noted,

that the law contains a presumption in favor of the legality of contracts and does not assume an intention to violate the law. *See e.g.* In re Estate of O'Rourke, 160 Misc. 2d 640, 610 N.Y.S.2d 704 (1994 Sur). In that vein, the Plaintiff believed the statements concerning legality on the Defendants' website when entering into the contract for the purchase of cigarettes. The Plaintiff was not a knowing party to an illegal contract.

It is also true that courts will generally not enforce illegal contracts. An exception to the rule is recognized where a contract is merely prohibited by statute and is not criminal in nature. Here, the pertinent New York statutes only imposes penalties and fines upon the manufacturers and retailers, not the innocent purchaser. As such, this contract is merely prohibited by statute and the Plaintiff should be allowed to recover its damages.

Even if this Court determined, as a matter of law, that the Plaintiff's insureds were somehow tainted by some illegal conduct, it remains the law of this state that where a plaintiff is less culpable than a defendant, they should not be precluded from recovering. Katz v Zuckermann, 119 A.D.2d 732, 501 N.Y.S.2d 144 (2d Dept 1986) (upholding a fee-splitting arrangement between a doctor and a nonprofessional medical technicians prohibited by N.Y. Educ. Law § 6509-a). Most importantly, a person for whose protection a transaction is declared illegal is not regarded as being equally at fault. Irwin v Curie,171 NY 409, 64 NE 161 (1902). Thus, the rule governing cases in which the parties are not equally at fault is frequently applied where the transaction is in violation of a law made for the protection of one party against the acts of another. Since they are not equally guilty, the party protected may recover. A statute may declare an agreement to be void, and yet only one of the parties may be guilty of its violation. In such cases, the guilty party is never allowed any relief under the statute or permitted to set up the statute as a defense to relief sought by the other party. Id. In particular, courts will sever illegal

components and enforce legal components where the injured party is less culpable and the other party would otherwise be unjustly enriched by using his own misconduct as a shield against otherwise legitimate claims. Artache v Goldin, 133 A.D.2d 596, 519 N.Y.S.2d 702 (2d Dept 1987).

That is, whenever a statute imposes a penalty upon one party and not upon the other, it is safe to assume that the parties are not to be regarded as being equally at fault. Tracy v Talmage, 14 NY 162 (1856). Where the contract is not *malum in se*, the innocent party may recover as upon an implied assumpsit against the party prohibited or upon whom the penalty is imposed for any money or property which he has advanced upon such contract. Akers v Mutual Life Ins. Co., 59 Misc 273, 112 NYS 254 (1908).

Since the pertinent statutes only impose penalties upon the Defendants, the Plaintiff's insureds are less culpable. Therefore, the Plaintiff, as subrogor, may recover and the Defendants' argument that the Plaintiff lacks standing to recover under an illegal contract should be denied.

## POINT III.   <u>PLAINTIFF'S CROSS-MOTION TO AMEND MUST BE GRANTED</u>

Finally, the Plaintiff's cross-motion to amend must be granted. A party may amend its pleading once as a matter of course at any time before a responsive pleading is served. F.R.C.P. 15(a); *see also* Golden Budha Corp. v. Canandian Land Co., NV, 931 F.2d 196 (2d Cir. 1991); *and* Le Grand v. Evan, 702 F.2d 415 (2d Cir. 1983). In the present case, the Defendants moved to dismiss the action rather than filing an Answer. As such, no Answer has been filed and the Plaintiff may still amend the complaint as a matter of course. The Plaintiff's Amended Complaint does not add any facts, but only seeks to add a cause of action, and to include the jury demand. The Plaintiff has therefore filed the Amended Complaint which is attached to the

Affidavit of Robert W. Phelan as Exhibit 4.  As such, the Plaintiff requests that this Court render its decision as to the sufficiency of the Amended Complaint and not the original Complaint.

## CONCLUSION

Applying the above law to the  pleadings as set forth in the Plaintiff's Amended Complaint, it is clear that the Defendants were properly served and that State Farm's allegations against Defendants are sufficient to state claims as a matter of law. Therefore, based on the facts and authorities set forth above, plaintiff, State Farm Insurance Company, respectfully requests that Defendants' motion to dismiss be denied in its entirety, with prejudice, and that this Court grant Plaintiff's cross-motion to amend the complaint.

Dated: New York, New York
      February 23, 2007

                    Respectfully submitted,

                    COZEN O'CONNOR

                    BY:_____
                      Robert W. Phelan, Esq. (RP 3825)
                    Attorneys for Plaintiff
                    45 Broadway, 16th Floor
                    New York, New York  10006
                    (212) 509-9400